516

Hillsborough
No. 7393

STATE OF MAINE *EX REL.* RITA M. FABIAN

v.

FRED H. FABIAN

August 31, 1976

*David H. Souter,* attorney general, and *John T. Pappas,* assistant attorney general *(Mr. Pappas* orally), for the State.

*Devine, Millimet, Stahl & Branch* and *Silas Little III (Mr. Shane Devine* orally) for the defendant.

DUNCAN, J.  This petition is brought by the State of Maine, Department of Health & Welfare, under the provisions of RSA ch. 546, the Uniform Reciprocal Enforcement of Support Law, on behalf of Michelle Fabian, the minor child of Rita Fabian, both residents of Kittery, Maine. The defendant interposed by way of special plea the defense of "res judicata and/or collateral estoppel" relying upon a divorce proceeding in which the defendant had been granted a divorce in 1972 from Rita Fabian. The Trial Court *(Perkins,* J.) ruled the divorce decree did not bar the present action.

At the conclusion of the evidence and without previous notice to the county attorney for Hillsborough County representing the State of Maine (RSA 546:12), the defendant submitted a written

motion seeking to require Rita Fabian and the child to submit to blood tests to determine paternity. RSA 522:1, 546:26-a. Subject to exception the motion was denied on the ground that it was not seasonably filed. The court then entered an order requiring the defendant to pay $10 per week toward the support of the minor child to be paid through the New Hampshire Probation Department. The questions of law presented by the defendant's exceptions were reserved and transferred by the presiding justice.

Fred and Rita Fabian were married in New Hampshire on June 22, 1963. On October 29, 1971, Fred Fabian brought a libel for divorce in Hillsborough County seeking dissolution of the marriage on the ground of treatment injurious to health, alleging in part that his wife had "consorted with another man or men to whom she is not married". The libel further alleged that no children had been born of the marriage. Counsel appeared for Rita but no answer was filed. The parties were aware that Rita was pregnant when the action was filed. The child, Michelle, was born on December 27, 1971.

The libel was thereafter heard, uncontested, by a master. The parties entered into a stipulation which was incorporated in the decree of divorce dated February 28, 1972. Paragraph 5 of the stipulation recited: "In consideration of the mutual agreements and covenants contained in this stipulation, the Libelee herewith waives any and all past, present or future claims for payment of support by said Libelant".

Soon after the divorce Rita and Michelle moved to Maine where Rita found work as a bookkeeper. The State of Maine has been supplementing her income with amounts designated specifically for support of the child. In November 1974, the State of Maine brought this action to enforce the defendant's obligation to support the minor child.

In support of his special plea of res judicata, the defendant points to the allegation of the libel alleging that no children had been born of the marriage, and asserts that since the allegation is deemed admitted (Superior Court Rule 218) Rita is precluded from relitigating the issue. RSA 491:App. R. 218 (Supp. 1975). He also relies upon the provision of the stipulation by which Rita waived any claim for future support. While Rita is a nominal plaintiff in the instant action, the real plaintiffs in interest are the State of Maine and Michelle Fabian for whom the support is sought. In determining whether or not the principles of res

judicata will bar subsequent litigation the court will look to the real parties in interest whether or not they are nominal parties. *Indian Head Nat'l Bank v. Simonsen*, 115 N.H. 282, 338 A.2d 546 (1975). Neither the State nor the minor child is bound by judgment in the divorce action since neither was a party in interest to that action. Hence the principles of res judicata do not apply. *Brown v. R.D. Werner Co.*, 428 F.2d 375 (1st Cir. 1970) (interpreting New Hampshire Law); *Cardillo v. Zyla*, 486 F.2d 473 (1st Cir. 1973) (interpreting New Hampshire Law).

The divorce stipulation cannot be interpreted to have waived the minor child's rights which the State of Maine now seeks to enforce. Generally speaking, a parent cannot waive the substantive rights of a minor child. *Merchants Mut. Cas. Co. v. Kiley*, 92 N.H. 323, 30 A.2d 681 (1943); *Hollis v. Tilton*, 90 N.H. 119, 5 A.2d 29 (1939); *see* MacNeil, *Settlement of Personal Injury Claims of Minors – A Proposal*, 3 N.H.B.J. 10 (1960). *See also Hansen v. Hansen*, 116 N.H. 329, 358 A.2d 409 (1976). Not having been a party to the divorce action the child is not precluded from claiming paternity in a later suit. *See* H. Clark, Law of Domestic Relations § 15.1, at 493 (1968); Annot., 65 A.L.R.2d 1381, 1396 (1959).

Finally, the plain provisions of RSA 458:23 support the trial court's denial of the special plea: "No decree of divorce shall affect the legitimacy of a child born or begotten in lawful matrimony, unless it shall be so expressed in the decree, and children born of a marriage entered into in good faith by the parties thereto shall be regarded as legitimate children and their legitimacy shall not be affected by a decree of nullity, unless it shall be so expressed in the decree."

At the close of the plaintiff's evidence, the defendant moved to require the parties to submit to blood tests to determine paternity. The motion was denied as not seasonably filed. RSA 522:1 provides that in any civil action in which paternity is an issue the court "may" order the principals to submit to blood tests and, upon motion by a party, "shall" order blood tests if such motion is made "at a time so as not to delay the proceedings unduly".

When the motion was presented at the close of the hearing, the trial judge had before him the testimony of the former wife that she was "not a hundred percent sure" that the defendant was in fact the father of the child; that she had had relations with him at a time when the child could be his; that so far as she knew the

allegation of the reciprocal action that he was the father of the child is true; that she had "an affair with another man ... [in] '69-'70" and was still having an affair about October 27, 1971, when the libel was brought; and that she signed the stipulation because she did not want "someone that didn't care for [the child] to come and take her, which he would have done".

The husband's testimony was also before the court. *See* RSA 546:22. He testified that he was living with his wife during March through September 1971; that when he learned in April 1971 that his wife was pregnant he had "suspicions" that the child was not his, but took no action until October when he "found out for sure" that she was "running around"; and finally that he was not "having relations with her ... since January of that year".

Additionally, in discussing the pleadings in the divorce action, with specific reference to the allegation that no children had been born of the marriage, defendant's counsel represented to the court "that the subject of this child was one which was dealt with by indirection on the part of [trial counsel] because it was felt that there would be no good served by openly bastardizing the child ... and total ignoring of the problem would satisfactorily resolve ... the issue whether [Fabian] was the father of the child".

On this state of the record, the trial court could properly conclude that at that stage of the proceedings the defendant had not produced evidence to rebut the presumption of legitimacy which could be considered "of greater weight than is required to support a probability" *(State v. Sargent,* 100 N.H. 29, 31, 118 A.2d 596, 598 (1955); *Saunders v. Fredette,* 84 N.H. 414, 151 A. 820 (1930)); and that justice did not require that the support proceedings should be suspended for blood tests which might prove inconclusive, particularly since the defendant had chosen not to seek any adjudication of his responsibility when the divorce decree was entered in 1972 or for over three years thereafter. *See McRae v. McRae,* 115 N.H. 353, 341 A.2d 762 (1975); *Watts v. Watts,* 115 N.H. 186, 337 A.2d 350 (1975).

We find no abuse of discretion in the denial of the motion for blood tests.

*Defendant's exceptions overruled.*

All concurred.