Portsmouth Family Division
No. 2008-023

IN THE MATTER OF J.B. AND J.G.

Argued: May 21, 2008
Opinion Issued: August 6, 2008

*Shaheen & Gordon, P.A.*, of Dover (*Stacey Shaheen Bellabona* on the brief and orally), for the petitioner.

*Wensley & Jones, PLLC*, of Rochester (*Daniel J. Harkinson* on the brief and orally), for the respondent.

BRODERICK, C.J. This is an interlocutory appeal, *see* SUP. CT. R. 8, from rulings of the Portsmouth Family Division (*DeVries,* J.), entered on the recommendation of a Marital Master (*Fishman,* M.), denying the respondent's motion to dismiss. We affirm and remand.

I

The record reveals the following facts. In November 2001, the respondent, J.G., gave birth to a child, A.B., at Wentworth-Douglass Hospital in Dover. The petitioner, J.B., was listed as the child's father on the birth certificate. The parties, who never married, also executed an affidavit of paternity at the time of A.B.'s birth, recognizing the petitioner as the child's father. *See* RSA 5-C:24 (Supp. 2007).

Although the parties have not lived together since A.B.'s birth, the petitioner has consistently maintained contact with the child. The respondent acknowledges that from 2003 through September 2006, A.B. was in the petitioner's care three or four days each week and that in 2004, she obtained a child support order against him.

After the parties had a disagreement about A.B.'s schooling in September 2006, the petitioner filed a parenting petition in the family division to establish his parental rights and responsibilities. *See* RSA ch. 461-A (Supp. 2007). In her reply, the respondent alleged that the petitioner was not A.B.'s biological father. Thereafter, the trial court, in response to requests from both parties, ordered paternity testing. *See* RSA 522:1 (2007). The results of that testing demonstrated that the petitioner was not A.B.'s biological father. We have not been asked to decide if the trial court erred in ordering such testing, but we note our recent decision in *In the Matter of Gendron & Plaistek,* 157 N.H. 314 (2008) (where out-of-state acknowledgement of paternity signed at birth established legal father, trial court erred in ordering genetic marker testing).

After receiving these test results, the respondent moved to dismiss the petitioner's parental rights action. She argued that the petitioner did not fall within the class of persons entitled to such rights under RSA chapter 461-A, and that granting parental rights to the petitioner would violate her constitutional right, as a fit natural parent, to raise and care for A.B., *see In the Matter of Nelson & Horsley,* 149 N.H. 545, 547 (2003). After initially granting the respondent's motion, the trial court later reversed itself and

ordered an immediate resumption of contact between the petitioner and the child. This interlocutory appeal followed.

## II

In reviewing a trial court's order on a motion to dismiss, "we assume the truth of the facts alleged by the [petitioner] and construe all reasonable inferences in the light most favorable to the [petitioner]." *Tosta v. Bullis*, 156 N.H. 763, 766 (2008) (quotation omitted). "We then engage in a threshold inquiry that tests the facts in the petition against the applicable law. Where the facts alleged by a [petitioner] are reasonably susceptible of a construction that would permit legal relief, we will uphold the denial of a motion to dismiss." *Id.* (quotation, brackets, and citation omitted).

The family division transferred the following questions for our consideration, which guide our "threshold inquiry" in this case:

(1) May petitioner maintain a parenting petition under N.H. RSA [chapter] 461-A, when he is neither a stepparent, biological parent, or grandparent to the child?

(2) Would allowing this petitioner to maintain a parenting petition violate respondent's fundamental liberty interest to raise her son, as secured by both [the] Federal and State Constitutions?

We answer the first question in the affirmative, the second question in the negative, and accordingly affirm the trial court's denial of the respondent's motion to dismiss.

## III

We turn first to the statutory question presented by this appeal. "In matters of statutory interpretation, we are the final arbiter of the intent of the legislature as expressed in the words of a statute considered as a whole. We look first to the statutory language itself, and where possible, we ascribe the plain and ordinary meanings to words used." *Appeal of Regenesis Corp.*, 156 N.H. 445, 455 (2007) (quotation omitted). "We do not consider words and phrases in isolation, but rather within the context of the statute as a whole. This enables us to better discern the legislature's intent and to interpret statutory language in light of the policy or purpose sought to be advanced by the statutory scheme." *Grand China v. United Nat'l Ins. Co.*, 156 N.H. 429, 431 (2007) (citation omitted). "When interpreting two statutes that deal with a similar subject matter, we construe them so that they do not contradict each other, and so that they will lead to reasonable results and effectuate the legislative purpose of the statutes." *Id.*

RSA chapter 461-A, titled "Parental Rights and Responsibilities," was enacted by the legislature in 2005. RSA 461-A:6 lays out the framework within which "parental rights and responsibilities" (formerly known as custody rights) are to be allocated. The term "parental rights and responsibilities" is defined to mean "all rights and responsibilities *parents* have concerning their child." RSA 461-A:1, IV (emphasis added). The chapter does not explicitly define the term "parent." It does, however, contemplate an award of parental rights to a stepparent or a grandparent, if in the best interests of the child. RSA 461-A:6, V.

■ Neither party asserts that the petitioner could be considered a stepparent or grandparent of A.B. In her brief, the respondent argues that the petitioner also cannot be considered A.B.'s "parent" under RSA chapter 461-A. She urges us, citing a dictionary only, to adopt a definition of "parent" as "one that begets or brings forth offspring." The respondent then reasons:

> DNA testing conclusively proves that Petitioner is not A.B.'s biological father, and in no way did Petitioner "beget" or "bring forth" A.B. . . . . Because Petitioner is not within any of the classes of people who may be awarded parental rights and responsibilities under N.H. RSA [chapter] 461-A, the Family Division incorrectly failed to dismiss the Parenting Petition.

We cannot agree, however, that the legislature intended such a limited definition of the term "parent" when it repeatedly employed that term in RSA chapter 461-A. After considering the overarching statutory scheme in this area, as we must, we observe that the legislature has set forth too many alternative routes to establish parental status that do not require proof of biological ties for us to give the respondent's argument much weight. *See, e.g.*, RSA ch. 170-B (Supp. 2007) (outlining adoption procedures); RSA 458:23 (2004) (legitimacy of child presumed when born of a marriage entered into in good faith); RSA 168-A:2, I(a) (2002) (paternity may be established by voluntarily petitioning court). The petitioner's lack of a biological connection to A.B. is therefore not fatal to his request for parental rights and responsibilities under RSA chapter 461-A, so long as he alleges sufficient facts to establish his status as a parent by other means.

■ The petitioner has met this threshold. We have long held that "the establishment of paternity is 'an essential prerequisite to imposing the obligation for child support.'" *In the Matter of Haller & Mills*, 150 N.H. 427, 429 (2003) (quoting *Watts v. Watts*, 115 N.H. 186, 188 (1975)). Thus,

when the respondent actively sought and received a child support order against the petitioner in 2004, she necessarily acknowledged his status as A.B.'s parent.

Further, we note that in this state, "[p]aternity [is] established upon the filing of . . . [a]n affidavit of paternity with the clerk of the town where the birth of the child occurred pursuant to RSA 5-C:24." RSA 168-A:2, I(b) (Supp. 2007). An affidavit of paternity requires information about a child's supposed "natural" father, and must be signed by the child's mother. RSA 5-C:25, I(b), (c) (Supp. 2007). "The affidavit of paternity [has] the legal effect of establishing paternity without requiring further action pursuant to this chapter, unless rescinded pursuant to RSA 5-C:28." RSA 168-A:2, I(b). RSA 5-C:28, I (Supp. 2007), in turn, provides: "A parent or legal guardian may request to rescind an affidavit of paternity from the clerk of the city or town where the birth occurred within 60 days of the filing of an affidavit of paternity unless an administrative or judicial proceeding related to the child results in an earlier date." After this sixty-day rescission period has passed, "any challenge to the affidavit shall be decided only by a court of competent jurisdiction." RSA 5-C:28, III (Supp. 2007). In this case, no challenge to the parties' affidavit of paternity has been filed.

On the record before us, the petitioner has made sufficient allegations to establish that he is a parent of A.B. To date, no court has entered an order terminating the petitioner's child support obligation, or rescinding the parties' affidavit of paternity, *see* RSA 5-C:28, III. Consequently, we hold that the trial court properly denied the respondent's motion to dismiss, and that the petitioner has standing to seek full parental rights and responsibilities under RSA chapter 461-A, which shall be assigned in accordance with the best interests of the child. *See* RSA 461-A:6.

We do not address the soundness of an order that would directly or indirectly grant the respondent's request, as set forth earlier in her proposed order on her motion to dismiss, that the petitioner be "adjudicated to not be the father of [A.B.]," as the issue is not before us. *But see McRae v. McRae*, 115 N.H. 353, 355 (1975) (allowing challenge to paternity after lengthy period of acquiescence, and passage of several opportunities to raise the issue, "would contravene the policy of this State's law to protect the child and the spouse from the belated resort to scientific proof" in an effort to terminate parental responsibility).

IV

We next consider the second transferred question. Because the petitioner has alleged sufficient facts to establish that he is a parent of A.B., we presume that he currently enjoys rights equal to those of the respon-

dent to raise and care for the child. *Cf. Nelson & Horsley*, 149 N.H. at 547. As a result, we see no unconstitutional intrusion on the respondent's right to raise and care for A.B. by the trial court's continued consideration of the pending parenting petition, and, therefore, hold that it correctly denied the respondent's motion to dismiss.

*Affirmed and remanded.*

DALIANIS, DUGGAN, GALWAY and HICKS, JJ., concurred.