CHRISTINE HUSKEY AMBROSE, Plaintiff v. MATTHEW THOMAS AMBROSE, Defendant

No. COA99-1375

(Filed 7 November 2000)

**Paternity— genetic testing—alleged past due child support**

The trial court erred by denying defendant putative father's request for genetic testing to establish paternity after plaintiff mother filed suit for payment of past due child support, because: (1) the issue had not been litigated and defendant never formally acknowledged paternity in the manner prescribed by N.C.G.S. § 110-132; and (2) defendant was not required to present evidence that another man had acknowledged paternity in order for the court to authorize the test.

Appeal by defendant from order entered 8 February 1999 by Judge Kenneth F. Crow in Craven County District Court. Heard in the Court of Appeals 19 September 2000.

*No brief filed for plaintiff-appellee.*

*McCotter, McAfee & Ashton, PLLC, by Rudolph A. Ashton, III, and Kirby H. Smith, III, for defendant-appellant.*

MARTIN, Judge.

Plaintiff, Christine Huskey Ambrose, brought this action seeking custody, child support, and past child support. The record tends to show that plaintiff met defendant, Matthew Thomas Ambrose, in December 1991 and they soon began an intimate relationship. On 18 April 1994, plaintiff informed defendant that she was pregnant and that he was the father of the unborn child. Defendant testified that he had not had sexual relations with plaintiff during the period from 1 March 1994 through 23 April 1994 and that he had doubt as to whether he was the father. However, in a subsequent meeting, plaintiff assured defendant that he was the father because she had not been intimate with any other person.

On 13 May 1994, plaintiff and defendant were married; on 1 January 1995, plaintiff gave birth to a daughter, Elizabeth Ann. The couple separated on 12 November 1995 and subsequently entered into a separation agreement on 19 November 1996 in which defendant agreed to pay child support.

In early 1998, plaintiff allegedly told defendant that he was not the father of Elizabeth Ann. On 10 August 1998, plaintiff filed her complaint in the present action seeking, *inter alia*, past due child support. Defendant did not answer the complaint, and a default judgment was entered 17 September 1998. Defendant then moved to set aside the default judgment and filed an answer to plaintiff's complaint which included a request for an appropriate genetic test to establish paternity. The trial court allowed defendant's motion to set aside the default judgment, but denied defendant's request for a paternity test. Following the court's denial of defendant's request for a paternity test, defendant signed an agreement consenting to pay child support for Elizabeth Ann and resolving all other pending issues, which was reduced to a memorandum of order and judgment. On 8 February 1999, a formal order denying the paternity test and incorporating the memorandum of order and judgment was entered. From this order, defendant appeals.

---

Defendant assigns error to the district court's denial of his request for genetic testing to establish paternity. Generally, a paternity test is permitted when a dispute over paternity arises:

> [i]n the trial of any civil action in which the question of parentage arises, the court shall, on motion of a party, order the mother, the child, and the alleged father-defendant to submit to one or more blood or genetic marker tests, to be performed by a duly certified physician or other expert . . . .

N.C. Gen. Stat. § 8-50.1(b1). In *State v. Fowler*, the North Carolina Supreme Court noted "[t]here can be no doubt that a defendant's right to a blood test is a substantial right and that, upon defendant's motion, the court must order the test when it is possible to do so." 277 N.C. 305, 309, 177 S.E.2d 385, 387 (1970). Nevertheless, an exception to this rule arises when the issue of paternity has already been litigated, or when the father has acknowledged paternity in a sworn written statement. N.C. Gen. Stat. § 110-132. In cases such as these, the individual questioning paternity is estopped from re-litigating the issue. *Withrow v. Webb*, 53 N.C. App. 67, 280 S.E.2d 22 (1981). In cases where the issue of paternity has not been litigated, however, or in cases where the alleged father has never admitted paternity, G.S. § 8-50.1 controls and the request for a paternity test will be allowed.

In the present case, the trial court found, apparently relying on *Jones v. Patience*, 121 N.C. App. 434, 466 S.E.2d 720, *disc. review*

*denied,* 343 N.C. 307, 471 S.E.2d 72 (1996), "[d]efendant offered no evidence that any other man had acknowledged paternity of the minor child . . ." and denied defendant's request for a paternity test. In *Jones,* the defendant-mother requested a paternity test in order to prove that her ex-husband was not the child's natural father and thus not entitled to visitation rights. Noting the marital presumption regarding children born during a marriage, the Court said, "North Carolina courts have long recognized that children born during a marriage, as here, are presumed to be the product of the marriage." *Id.* at 439, 466 S.E.2d at 723 (citations omitted). While recognizing that this marital presumption is "ordinarily" rebuttable by evidence of a blood test, the Court stated, *"in the context of a custody dispute between the mother, and her husband or former spouse,* concerning a child born during their lawful marriage, the marital presumption is rebuttable only upon a showing that another man has formally acknowledged paternity . . . ." *Id.* (citations omitted) (emphasis added). The Court rejected the mother's attempts to block the visitation rights of a man willing to maintain his role as father in the absence of a showing that another man had formally admitted paternity. *Id.* Otherwise, the mother would have the authority to illegitimate her own children, which stands in conflict with the public policy of this State. *Id.* at 440, 466 S.E.2d at 723.

In *Wright v. Wright,* 281 N.C. 159, 188 S.E.2d 317 (1972), the North Carolina Supreme Court permitted the introduction of blood-grouping tests to prove that a man could not be the father of a child when a question of paternity arose in a civil action. In *Wright,* the Supreme Court noted that a blood test can rebut the presumption of paternity which attaches when a child is born during a marriage:

> Although we continue to recognize its primary importance in preserving the status of legitimacy of children born in wedlock, this presumption must give way before dependable evidence to the contrary. Blood-grouping tests which show that a man cannot be the father of a child are perhaps the most dependable evidence we have known.

*Id.* at 172, 188 S.E.2d at 325-26 (citation omitted). The presumption of paternity is rebuttable because a man will not be required to support a child not his own; conversely, "[t]he father of an illegitimate child has a legal duty to support his child." *Wright v. Gann,* 27 N.C. App. 45, 47, 217 S.E.2d 761, 763 (1975) (citing G.S. § 49-2), *cert. denied,* 288 N.C. 513, 219 S.E.2d 348 (1975). *Jones,* therefore, must be construed

in the narrow context of a custody dispute when the mother challenges the paternity of her former spouse; in that circumstance, the presumption of paternity cannot be overcome unless another man has come forward and formally acknowledged paternity.

In the present case, plaintiff filed suit for payment of past due child support and defendant answered by requesting a genetic test to determine paternity of the child. Defendant is not barred from contesting paternity because the issue had not been litigated and because defendant never formally acknowledged paternity in the manner prescribed by G.S. § 110-132. *Jones v. Patience* does not apply to bar defendant's right to a genetic test under these facts, and defendant was not required to present evidence that another man had acknowledged paternity in order for the court to authorize the test. Pursuant to *Wright v. Wright*, defendant is entitled to an appropriate test to establish paternity. Thus, we remand this case to the district court for a new hearing with instructions to order a test to establish paternity. Because of this determination, we need not address the remaining issues defendant has raised on appeal.

Reversed and remanded.

Judges GREENE and EDMUNDS concur.